IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

DAVID BERRY and MELANIE BERRY )
)
Plaintiffs, )
)
v. ) Case No. 2:20-cv-02393-JPM
)
REGIONS FINANCIAL CORPORATION, )
REGIONS BANK, TRUIST FINANCIAL )
CORPORATION, TRUIST BANK, SUNTRUST )
BANK, and BRANCH BANKING & TRUST )
COMPANY d/b/a SUNTRUST BANK, )
)
Defendants. )

**DEFENDANTS REGIONS FINANCIAL CORPORATION AND REGIONS BANK'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION AMEND COMPLAINT**

Defendants Regions Financial Corporation and Regions Bank (collectively "Regions"), by and through undersigned counsel, pursuant to Local Rule 7.2, submit this Response in Opposition to Plaintiffs' Motion to Amend Complaint (ECF No. 25). In support, Regions states as follows:

## INTRODUCTION

Plaintiffs admit that their original Complaint fails to comply with the pleading standards of the Federal Rules of Civil Procedure. (ECF No. 30). Plaintiffs have therefore sought leave to amend their Complaint to include additional allegations in an attempt to shore up their deficient pleading. As discussed herein, because Plaintiffs' claims in the proposed Amended Complaint for Damages ("Amended Complaint") also cannot withstand a Rule 12(b)(6) motion to dismiss, Plaintiffs' proposed amendment is futile and should be denied. And, as Plaintiffs have admitted,

"if the Motion to Amend the Original Complaint should be denied, the Motions to Dismiss must be granted." (ECF No. 30).

**ALLEGATIONS OF THE PROPOSED AMENDED COMPLAINT**

According to the allegations of Plaintiffs' proposed Amended Complaint, Plaintiffs entered into a contract in July 2018 to purchase certain real property located in Hardin County, Tennessee. Amended Complaint, ¶ 2 (ECF No. 25). Plaintiffs retained J. Gilbert Parrish ("Parrish") as their closing attorney. *Id*. at ¶ 3. The realtor who handled the transaction was Callen's Realty of Counce, Tennessee. *Id.* The transaction was scheduled to close on August 9, 2018. *Id*. at ¶ 10.

On July 26, 2018, Plaintiffs received an email from Karen Barnett of Callen's Realty notifying them that the transaction was ready to proceed to closing. *Id*. at ¶ 4. That same day, Jan Baugus at the Parrish law firm allegedly "received fraudulent emails purporting to have been sent by Plaintiff David Berry requesting a copy of the closing statement and wiring instructions but were in fact sent by an unknown 3rd party from the South African time zone." *Id*. at ¶ 5. On August 1, 2018, Plaintiffs allegedly received fraudulent emails regarding the wire instructions for the closing. *Id.* at ¶¶ 6-7. According to Plaintiffs, these emails were disguised as emails from Ms. Barnett of Callen's Realty and Ms. Baugus of the Parrish law firm, but these emails were actually sent by an "unidentified international fraudulent third party." *Id.*

On August 3, 2018, prior to the scheduled closing, Plaintiffs visited a Regions Bank branch in Shelby County, Tennessee and "caused to be issued a wire transfer order" for "the requested amount necessary to close the sale of the property at issue." *Id.* at ¶ 8. A copy of the August 3, 2018 Domestic Wire Transfer Request/Authorization ("August 3 Wire Request") prepared by Plaintiffs and referenced in their proposed Amended Complaint is attached hereto as

Exhibit A.[1] Plaintiffs' August 3 wire instructions which directed the wire to an account ending in 0391 were apparently based on the information contained in the fraudulent emails sent to Plaintiffs on August 1, 2018.

By executing the August 3 Wire Transfer Request, Plaintiff Melanie Berry agreed to the terms of a "Domestic Funds Transfer Agreement," applicable to "Transfer Instructions issued in person by Customer." Ex. A, ¶ 1. Melanie Berry acknowledged that she "has requested the Bank to wire transfer funds to the Beneficiary in accordance with the instructions set out on the reverse side hereof." *Id*. She further agreed:

> 5. Issuance of Transfer Instructions . . . . Customer acknowledges that Bank shall have no obligation to ascertain the identity of the beneficiary or the beneficiary's bank . . . . Customer further acknowledges that Bank is not responsible for detecting any Customer error contained in any Transfer Instructions issued by Customer.
>
> 6. Errors in Transfer Instructions. Customer agrees that Bank shall have no obligation to discover errors in Transfer Instructions and shall not be liable to Customer for errors made by Customer, including but not limited to errors made in identifying the beneficiary . . . . Customer acknowledges and agrees that (a) if the identifying number or bank account number Customer has given in this request is not the named beneficiary's, the beneficiary's bank may pay this funds transfer according to the number rather than according to the beneficiary's name.

Ex. A at ¶¶ 5-6. In other words, Melanie Berry agreed that it was Plaintiffs' obligation to ensure that the wire instructions provided to Regions were correct and that Regions would not be liable

---

[1] "In determining whether a complaint sets forth a plausible claim, a court not only may consider the allegations, but may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *CHS/Community Health Sys., Inc. v. Ledford*, 204 F. Supp. 3d 983, 985 (M.D. Tenn. 2016); *see also Snodgrass-King Pediatric Dental Associates, P.C. v. DentaQuest USA Ins., Co.*, 79 F. Supp. 3d 753, 761 (M.D. Tenn. 2015) ("[A]ny matters attached to the pleadings are considered part of the pleadings as well as documents that are referred to in the complaint or are 'central' to the claim."). In this case, the Complaint expressly references the August 3 Wire Request, and the request is central to Plaintiffs' claims. ECF No. 25 at ¶¶ 8, 16. In fact, Plaintiffs apparently intend to attach the document as an exhibit themselves but did not do so when filing the proposed Amended Complaint. *Id.* at ¶ 8 ("A copy of the above referenced wire transfer order is attached hereto as Exhibit A."). The Court may rely on the August 3 Wire Request.

if Plaintiffs provided incorrect instructions. *See id.* On August 3, 2018, Regions processed the wire request according to the wire instructions provided by Melanie Berry in-person in the August 3 Wire Request. *See* Amended Complaint, ¶ 8*; see also* Regions Wire Report, attached hereto as Exhibit B.[2] The wire of funds was sent to the account number ending in 0391 which Melanie Berry personally provided in the August 3 Wire Request. *See* Exs. A and B.

Plaintiffs allege that after executing the August 3 Wire Request, Plaintiff Melanie Berry then emailed a copy of the "wire transfer request . . . to Karen Barnett at attorney Parrish's office," but that email was allegedly "intercepted by unidentified 3rd parties and was never actually received by the intended recipient, Karen Barnett." Amended Complaint, at ¶ 8. Instead, after the funds had already been wired, Ms. Barnett received a copy of "a fraudulent wire transfer request sent by unidentified fraudulent third parties" on August 7, 2018. *Id.* at ¶ 9. On August 9, 2018, the date of the scheduled closing, Plaintiffs discovered that they had been defrauded and that their closing attorney never received the wire transfer. *Id.* at ¶ 10.

Based on these allegations, Plaintiffs assert claims against Regions for "negligence and breach of contract" for "processing of the fraudulent wire transfer request" in violation of

[2] As discussed previously, in conducting an analysis under Rule 12(b)(6), the Court may consider materials integral to the proposed Amended Complaint. *CHS/Community Health*, 204 F. Supp. 3d at 985. The basis for Plaintiffs' entire lawsuit is the alleged wrongful wire transfer. *See generally* Amended Complaint. Therefore, the Regions Wire Report is "integral to the Complaint" and may be considered under Rule 12(b)(6). *See Snodgrass-King*, 79 F. Supp. 3d at 761. Despite the Regions Wire Report confirming that the wire was conducted on August 3, 2018, Plaintiffs appear to later allege that the wire was conducted on August 7, 2018. Amended Complaint, ¶ 9. The Regions Wire Report contradicts the incorrect allegations of paragraph 9 of the Amended Complaint and trump them. *Segrist v. Bank of New York Mellon*, No. 3:-16-cv-00063, 2017 WL 3674841, at *3 n.4 (M.D. Tenn. Aug. 25, 2017). ("When a written instrument contradicts allegations in the complaint, the exhibit trumps the allegations."). Because the account number (0391) listed in the August 3 Wire Request and the account number in the Regions Wire Report (0391) are the same, this confirms that the wire was in fact sent based on the August 3 Wire Request. (The second page of the Wire Report appears to include an unrelated transaction conducted by Melanie Berry not relevant to this lawsuit.)

"sections 47-4A-205, 207(b), T.C.A" *Id.* at ¶ 15. Plaintiffs list a variety of allegations of wrongdoing against Regions, all of which boil down to Regions' alleged failure to have, or alternatively abide by, commercially reasonable security procedures in processing the wire transfer. *Id.* Plaintiffs seek $750,000 in compensatory damages and $1 million in punitive damages, plus attorneys' fees. *Id.* As explained below, Plaintiffs' proposed Amended Complaint fails to state a claim upon which relief can be granted, and Plaintiffs' Motion to Amend should therefore be denied.

**STANDARD OF LAW**

"Although Federal Rule of Civil Procedure 15(a)(2) provides that a court 'should freely give leave [to amend a complaint] when justice so requires,' the right to amend is not absolute or automatic." *Islamic Center of Nashville v. Tennessee*, 872 F.3d 377, 386 (6th Cir. 2017) (quoting *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008). Furthermore, while "a court should freely give leave to amend a complaint when justice so requires, it does not need to give leave if doing so would be futile, such as when the amended complaint cannot survive a motion to dismiss." *United States ex rel. Ibanez v. Bristol-Myers Squibb Company*, 874 F.3d 905, 917 (6th Cir. 2017); *Mattox v. Memphis Police Department*, No. 2:19-cv-2139-MSN-dkv, 2019 WL 4511311, at *2 (W.D. Tenn. Sept. 19, 2019) ("One reason for not allowing an amendment is that the amendment would be futile. 'A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.'"). Indeed, "an amendment may not be allowed if the complaint as amended could not withstand a Fed. R. Civ. P. 12(b) (6) motion." *Islamic Center*, 872 F.3d at 387 (quoting *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041-42 (6th Cir. 1991)); *Mattox*, 2019 WL 4511311, at *2 (The "proposed amendment is

futile because after amendment, the Complaint could not withstand a Rule 12(b)(6) motion to dismiss, and therefore, the request for leave to amend is DENIED.").

## ARGUMENT

### I. Plaintiffs' negligence claim is preempted by Article 4A, regardless of the additional allegations.

Despite the additional allegations, the negligence claim in Plaintiffs' proposed Amended Complaint still fails to state a claim.[3] As set forth in Regions' Motion to Dismiss, negligence claims relating to the processing of wire transfer requests are preempted by Article 4A of the UCC. *See, e.g., Wright v. Citizens Bank of East Tennessee*, 640 Fed. App'x. 401, 409-10 (6th Cir. 2016) (finding that Tennessee's Article 4A "displaces common law claims relating to wire transfers"); *Russell Barnett Ford of Tullahoma, Inc. v. H & S Bakery, Inc.*, 398 F. Supp. 3d 287, 300-02 (E.D. Tenn. Aug. 2, 2019); *C-Wood Lumber Co., Inc. v. Wayne County Bank*, 233 S.W.3d. 263, 281-82 (Tenn. Ct. App. 2007); *Fuller v. Community National Bank*, No. E2018-02023-COA-R3-CV, 2020 WL 1485696, at *12 (Tenn. Ct. App. Mar. 27, 2020) ("[P]laintiff's non-UCC claims are unavailable in this action . . ."); *Rock Point School, Inc. v. Wells Fargo Bank, N.A.*, No. CV-15-08057, 2015 WL 1312302, at *5 (D. Ariz. Aug. 4, 2015) ("Courts have generally concluded that analogous U.C.C. Article 4 provisions preempt negligence claims for the improper processing of wire transfer requests."); *Sliders Trading Co. v. Wells Fargo Bank NA*, No. 17-cv-04930, 2017 WL 6539843, at *5 (N.D. Cal. Dec. 21, 2017) ("[B]ecause the U.C.C. provides a remedy for a bank's processing of fraudulent payment orders, it displaces common-law claims like the negligence claim here. The court thus dismisses the claim."). This

---

[3] Plaintiffs have apparently abandoned their claims for conversion and breach of warranty. However, to the extent Plaintiffs attempt to preserve those claims in the Amended Complaint, Plaintiffs' proposed amendment is futile and fails to state a claim for conversion and breach of warranty for the reasons set forth in Regions' Motion to Dismiss.

is true regardless of whether the wire transfer is governed by Tennessee's Article 4A, as Plaintiff asserts in the proposed Amended Complaint, or Regulation J for wires conducted via Fedwire. *See Financial Northeastern Corp. v. Angelo,* No. 95-56863, 1997 WL 341792, at *1 (9th Cir. June 19, 1997) ("Because FNC's negligence claims all have to do with the rights of the parties to the wire transfer, they are preempted by Regulation J.").

These preemption principles also apply equally to the new allegations in the proposed Amended Complaint pertaining to Regions' alleged failure to maintain or abide by commercially reasonable security measures. *See Rock Point School*, 2015 WL 1312302, at *5 (granting Rule 12(b)(6) motion based on preemption because "[t]he claim that Defendant was negligent 'by failing to employ reasonable security measures to prevent the fraudulent transfer of Plaintiff's funds' implicates the Article 4A allocation of liability"); *ReAmerica, S.A. v. Wells Fargo Bank Int'l*, No. 04 Civ 5233, 2008 WL 7811571, at *7 (S.D.N.Y. Mar. 18, 2008) (ruling that "Article 4A preempts Plaintiff's common law claims for . . . negligence" relating to commercially reasonable security procedures). The fact that Plaintiffs refer to negligence as "antecedent" does not resolve the fact that Plaintiffs' negligence claim is based on Regions' alleged conduct in processing Plaintiffs' wire transfer request. Complaint at ¶¶ 15-16. Plaintiffs cannot assert a common law negligence claim for such a "situation covered by article 4A." *Wright*, 640 Fed. App'x at 408. The negligence claim in the proposed Amended Complaint is futile.

## II. Because Plaintiffs authorized the August 3 wire transfer in person at a bank branch, the commercial reasonableness of Regions' security procedures under Tenn. Code Ann. § 47-4A-205 is irrelevant.

In the proposed Amended Complaint, Plaintiffs contend that Regions violated Tenn. Code Ann. §§ 47-4A-205 by not having commercially reasonable security procedures "in place designed to prevent [the] fraudulent transaction" or, "in the alternative, if they did have such a

Security Procedure in place, they failed to follow that procedure." Amended Complaint at ¶ 15.1. However, the "rules" imposed by Tenn. Code Ann. § 47-4A-205 only apply "[i]f an accepted payment order was transmitted pursuant to a security procedure for the detection of error." Tenn. Code Ann. § 47-4A-205(a). Because the August 3 Wire Request was authorized by Plaintiffs in person at a Regions bank branch pursuant to Tenn. Code Ann. § 47-4A-202(a), as is clear from the allegations of the proposed Amended Complaint, the "commercial reasonableness" of Regions' security procedures is irrelevant, and Tenn. Code Ann. 47-4A-205 is inapplicable.

Tenn. Code Ann. § 47-4A-202(a) and (b) provide as follows:

> (a) A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency.
>
> (b) If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if:
>
> (i) The security procedure is a commercially reasonable method of providing security against unauthorized payment orders; and
>
> (ii) The bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer. The bank is not required to follow an instruction that violates a written agreement with the customer or notice of which is not received at a time and in a manner affording the bank a reasonable opportunity to act on it before the payment order is accepted.

Tenn. Code Ann. § 47-4A-202(a) and (b). Subsection (a) applies to circumstances where a payment order is authorized or made in person, while subsection (b) applies to circumstances where a payment order is made electronically, thus requiring a security procedure. *See Choice Escrow and Land Title, LLC v. BancorpSouth Bank*, 754 F.3d 611, 613 (8th Cir. 2014)

("Because the customer is not physically present at the bank, the bank uses security procedures, such as passwords and electronic tokens, to verify that the person sending the payment order is actually the customer.") (discussing Mississippi's Article 4A).

> In two circumstances, [] the bank may shift the risk of a fraudulent payment order to the customer. The first is the rare circumstance in which the bank can prove that the customer "authorized the order . . ." This circumstance is rare because ordinarily the bank has "no way of determining the identity or the authority of the person who caused the message to be sent." Because of this inadequacy, Article 4A contemplates a second circumstance in which a customer will bear the risk of a fraudulent payment order. If a bank and its customer agree to implement a security procedure designed to protect themselves against fraud, the customer will bear the risk . . .

*Id*. (emphasis added). Plaintiffs plead that Melanie Berry appeared personally at a Regions branch and instructed the wire transfer. Amended Complaint at ¶ 8. Indeed, Plaintiffs allege that the August 3 Wire Request was authorized by Plaintiffs. *Id.* at ¶ 16. By authorizing and directing the August 3 Wire Request, Melanie Berry "requested the Bank to wire transfer funds to the Beneficiary in accordance with the instructions set out on the reverse side [t]hereof." Ex. A.

Thus, the first "rare circumstance" recognized in *Choice Escrow* is applicable to the instant case. 754 F.3d at 613. Because there is no dispute that the August 3 Wire Request was authorized in person by Plaintiff Melanie Berry under Tenn. Code Ann. § 47-4A-202(a), Regions' security procedures and their commercial reasonableness under subsection (b) are irrelevant to the facts of this case. *See* Tenn. Code Ann. § 47-4A-203, cmt. 1. Tenn. Code Ann. § 47-4A-205 is simply inapplicable because Plaintiffs do not allege that the wire transfer was authorized "pursuant to a security procedure." Tenn. Code Ann. § 47-4A-205. Rather, based on the allegations of the proposed Amended Complaint, the August 3 Wire Request was authorized by Melanie Berry in person pursuant to Section 4A-202(a)

Section 4A-202(b) contemplates an electronic request from a customer submitted to the receiving bank and provides that the receiving bank must take "commercially reasonable" steps in order to ensure that the wire transfer request is one actually originated by the true customer. Tenn. Code Ann. § 47-4A-203, cmt. 1 ("In a very large percentage of cases covered by Article 4A, transmission of the payment order is made electronically. The receiving bank may be required to act on the basis of a message that appears on a computer screen. . . There is no way of determining the identity or the authority of the person who caused the message to be sent.") (emphasis added). The security procedures mandated by Article 4A are intended to prevent unauthorized payment orders from being initiated or altered electronically by those without authority. It is not directed toward an authorized payment order received directly and personally from the customer, as in the instant case. *See Choice Escrow*, 754 F.3d at 613 ("Because the customer is not physically present at the bank, the bank uses security procedures, such as passwords and electronic tokens, to verify that the person sending the payment order is actually the customer.").

As Plaintiffs fully admit, Plaintiffs received fraudulent wire instructions via email on August 1, 2018 and then initiated an in person wire transfer on August 3, 2018 based on those fraudulent instructions. Amended Complaint at ¶¶ 6-8. This is precisely the scenario where a "bank may shift the risk of a fraudulent payment order to the customer." *Choice Escrow*, 754 F.3d at 613. Commercially reasonable verification methods to test the authenticity of the request are irrelevant and inapplicable to the facts at hand. Plaintiffs' claim against Regions for violation of Tenn. Code Ann. § 47-4A-205 fails as a matter of law, and thus Plaintiffs' Amended Complaint is futile in this regard as well.

## III. Plaintiffs fail to state a claim for violation of Tenn. Code Ann. § 47-4A-207.

Plaintiffs also contend that Regions violated Tenn. Code Ann. § 47-4A-207 by not having or abiding by commercially reasonable security measures. However, this statute has nothing to do with security procedures, so Plaintiffs' allegations are irrelevant. *See* Tenn. Code Ann. § 47-4A-207. In fact, Plaintiffs' allegations actually demonstrate that Regions has no liability under this statute.

The statute addresses which "rules apply" in the situation where a payment order "identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons." Tenn. Code Ann. § 47-4A-207(b). That is what Plaintiffs allege happened here. Amended Complaint, ¶ 9. Under subsection (c)(2) of the statute, an originating bank like Regions is not liable if "the originator, before acceptance of the originator's order, had notice that payment of a payment order issued by the originator might be made by the beneficiary's bank on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary." *Id.; see also* cmt. 3 ("Under . . . subsection [c], the originator is responsible for the inconsistent description of the beneficiary if it had notice that the order might be paid by the beneficiary's bank on the basis of that number.") That is exactly what Melanie Berry agreed to and had notice of under the August 3 Wire Request. Ex. A, at ¶ 6 ("Customer acknowledges and agrees that (a) if the identifying number or bank account number Customer has given in this request is not the named beneficiary's, the beneficiary's bank may pay this funds transfer according to the number rather than according to the beneficiary's name."). Plaintiffs' claim for violation of Tenn. Code Ann. § 47-4A-207 is futile based on Plaintiffs' own allegations.

**IV. The proposed Amended Complaint fails to state a claim for breach of contract.**

Plaintiffs' additional allegations in the proposed Amended Complaint are insufficient to state a claim for breach of contract. Other than the conclusory allegations in Paragraph 15 and 16 that Regions caused damages "in breach of contract," Plaintiffs still fail to identify anywhere in the Complaint any specific "contract" that Regions has breached, much less identify any specific provision of the alleged contract which has been breached. Plaintiffs fail to satisfy even the first element of a breach of contract claim. *See Nickell v. Bank of America, N.A.*, No. 11–2006–STA–dkv, 2012 WL 394467, at *11 (W.D. Tenn. Feb. 6, 2012) ("The Court finds that Plaintiffs' Amended Complaint has failed to satisfy even the first element of breach of contract. Plaintiffs do not identify or present the Court with the contract which BOA and SunTrust allegedly breached."). Furthermore, the element of "nonperformance amounting to a breach" cannot be adequately alleged when there are no allegations as to what the alleged contract requires of Regions in the first place. *See id.*; *Ingram*, 215 S.W.3d at 373; *Ross v. Orion Financial Group, Inc.*, No. M2018-00991-COA-R3-CV, 2019 WL 1084286, at *10 (Tenn. Ct. App. Mar. 7, 2019) ("[T]he 'nonperformance' is not adequately asserted if there is no description of what the allegedly breached contract required in the first place.").

In order to properly state a claim for breach of contract, Plaintiffs must do more than simply allege misconduct. *See Morris Props., Inc. v. Johnson*, No. M2007-00797-COA-R3-CV, 2008 WL 1891434, at *1 (Tenn. Ct. App. Dec. 10, 2007) ("Yet the terms of the contract are not disclosed . . . and thus the assertions of misconduct by [the defendant] . . . do not effectively allege a breach of . . . contract."). Because Plaintiffs fail "to allege which provisions of the [contract] were breached, or how those provisions were breached, and Plaintiffs do not provide any facts to support their legal conclusion," dismissal of the claim is appropriate. *Simmons v.*

*Countrywide Home Loans*, No. 3:09-00621, 2010 WL 1408592, at *3 (M.D. Tenn. Feb. 25, 2010); *see also Pearson v. Specialized Loan Servicing, LLC*, No. 1:16-cv-318, 2017 WL 3158791, at *4 (E.D. Tenn. Jul. 24, 2017) (finding plaintiff's failure "to identify any provision in the security trust—an unspecified document that she has not attached to the Amended Complaint or filed in the record—that the [defendant] has breached" to be "fatal to her claim [for breach of contract]" and dismissing claim for failure to state a claim upon which relief can be granted); *Shafron v. Aviva Life & Annuity Co.*, No. 1:11 CV 00732, 2014 WL 763238, at *5 (N.D. Ohio Feb. 21, 2014) ("[F]or a breach of contract claim to survive a Rule 12(b)(6) motion to dismiss under the pleading requirements of *Ashcroft v. Iqbal*, a plaintiff must adequately plead . . . the specific contract provision breached."); *Cook v. Home Depot U.S.A., Inc.*, No. 2:06-cv-00571, 2007 WL 710220, at *3 (S.D. Ohio Mar. 6, 2007) (granting defendant's motion to dismiss after stating, "[p]resuming all of the facts in the Amended Complaint to be true, Plaintiff fails to point to a specific contractual provision that Home Depot failed to perform"); *Harden v. Ford Motor Co.*, 408 F. Supp. 2d 309, 314 (E.D. Mich. 2005) ("Defendant Lloyd Bridges next argues that Plaintiff's breach of contract claim against it must be dismissed because Plaintiff fails to identify any contract term that it has breached. Lloyd Bridges is correct.").

The only contract between Plaintiffs and Regions that could possibly support a breach of contract claim is the August 3 Wire Request alluded to in Paragraph 8. Complaint at ¶ 8. Yet, Plaintiffs do not allege any facts to support an alleged breach of this agreement. To the contrary, in the August 3 Wire Request, Melanie Berry specifically agreed that Regions would not be "responsible for detecting any Customer error contained in any Transfer Instructions issued by Customer" and that Regions "shall have no obligation to discover errors in Transfer Instructions and shall not be liable to Customer for errors made by Customer, including errors made in

identifying the beneficiary." Ex. A at ¶¶ 5-6. In other words, Plaintiffs disclaimed any liability related to their error in using fraudulent wire instructions. Furthermore, pursuant to the August 3 Wire Request, "if the identifying number or bank account number Customer has given in th[e] request is not the named beneficiary's," which is exactly what Plaintiffs allege was the case in Paragraph 9 of the proposed amendment, then the funds could be wired "according to the number rather than according to the beneficiary's name," which is exactly what Regions did. *Id*. at ¶ 6; Ex. B. Plaintiffs' allegations demonstrate that Regions complied with the terms of the August 3 Wire Request. The proposed Amended Complaint fails to state a claim for breach of contract and is thus futile.

## CONCLUSION

For the foregoing reasons, Defendants Regions Financial Corporation and Regions Bank respectfully request that this Court deny Plaintiffs' Motion to Amend.

Dated: August 3, 2020.

Respectfully submitted,

s/ Robert F. Tom
Robert F. Tom (TN #26636)
Zachary A. Kisber (TN #33388)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: 901.577.2159
Facsimile: 901.577.0818
rtom@bakerdonelson.com
zkisber@bakerdonelson.com
*Counsel for Defendants Regions Financial Corporation and Regions Bank*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of August 2020, I filed the foregoing using the CM/ECF system which will send electronic notice to counsel of record registered with the CM/ECF system.

s/ Robert F. Tom