# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| DAVID BERRY and MELANIE BERRY, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> REGIONS FINANCIAL CORPORATION; ) <br> REGIONS BANK; TRUIST FINANCIAL ) <br> CORPORATION; TRUIST BANK; ) <br> SUNTRUST BANK; and BRANCH ) <br> BANKING & TRUST COMPANY, d/b/a ) <br> SUNTRUST BANK, ) <br> ) <br> Defendants. ) | Case No. 2:20-cv-2393-JPM-atc |

## ORDER DENYING PLAINTIFFS' MOTION TO AMEND COMPLAINT
## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Before the Court is Plaintiffs' Motion to Amend Complaint ("Motion to Amend"), filed on July 20, 2020. (ECF No. 25.) Plaintiffs move the Court pursuant to Federal Rule of Civil Procedure 15 for leave to amend the Complaint "in order to correct and clarify the allegations and averments of the Original Complaint." (Id. at PageID 161.) Plaintiffs attached a copy of the Proposed Amended Complaint to their Motion to Amend. (ECF No. 25 at PageID 163–70.)

Defendants Regions Bank and Regions Financial Corporation ("the Regions Defendants") filed their Response to Plaintiffs' Motion to Amend on August 3, 2020. (ECF No. 31.) The Regions Defendants argue that the Proposed Amended Complaint fails to state a claim upon which relief can be granted, that each alleged claim in the Proposed Amended Complaint is futile and that therefore this Court should deny the Motion to Amend. (See generally id.)

Defendant Truist Bank[1] filed its Response to Plaintiffs' Motion to Amend on August 3, 2020. (ECF No. 32.) Truist adopts the arguments of the Regions Defendants. (Id. at PageID 203.) Additionally, Truist argues that Plaintiffs are not a customer of Truist and that they cannot maintain a direct cause of action against Truist. (Id. at PageID 204.)

Plaintiffs filed a Reply[2] on August 4, 2020. (ECF No. 34.) Plaintiffs argue that Defendants' arguments in opposition of the Motion to Amend are premature and effectively turn the Motion to Amend into a summary judgment motion. (Id. ¶ 3.) Plaintiffs also argue that the Tennessee Court of Appeals cases cited by Defendants in support of their assertion that Plaintiffs' common law claims are preempted by Article 4A of title 47 of the Tennessee Code Annotated are inapplicable "as neither case deals with the issues presented by *cyber criminals*." (Id. ¶¶ 4–7.)

For the reasons set forth below, Plaintiffs' Motion to Amend is **DENIED**.

## I.  BACKGROUND

### A.  *Factual Background*

This action arises out of a fraudulent wire transfer initiated by Plaintiffs on August 3, 2018. (Am. Compl., ECF No. 25 ¶ 8.) Plaintiffs entered into a contract to purchase real property in July 2018 and retained the law firm of J. Gilbert Parrish ("Parrish Law Firm") as their closing attorney. (Id. ¶¶ 2–3.) The closing was scheduled for August 9, 2018. (Id. ¶ 10.)

---

[1] Truist Bank is the successor organization of the following Defendants named by Plaintiffs: Truist Financial Corporation, Truist Bank, SunTrust Bank, and Branch Banking & Trust Company, d/b/a SunTrust Bank. (Truist Bank Mem., ECF No. 10-1 at PageID 83 n.1.) Truist Bank "was formed on December 7, 2019, by the merger of SunTrust Bank into Branch Banking and Trust Company, and Branch Banking and Trust Company's subsequent change of its name to Truist Bank." (Id.)

[2] Plaintiffs' Reply is titled "Reply of Plaintiffs to Memorandum of Regions Financial Corporation and Regions Bank and Truist Bank in Support of Motion to Dismiss," but substantively responds to Defendants' Responses to Plaintiffs' Motion to Amend. (See generally ECF No. 34.)

Plaintiffs allege that on July 26, 2018, Jan Baugus at the Parrish Law Firm "received fraudulent emails purporting to have been sent by Plaintiff David Berry requesting a copy of the closing statement and wiring instructions." (Id. ¶ 5.) Plaintiffs allege that those emails "were in fact sent by an unknown 3rd party from the South African time zone." (Id.) Plaintiffs further allege that on August 1, 2018, they received fraudulent emails purporting to be from Baugus and from their realtor with wire transfer instructions. (Id. ¶¶ 6–7.) The emails instructed Plaintiffs to contact Baugus at Parrish Law Firm with any questions, but provided a fraudulent email address for Baugus. (Id. ¶ 6.)

On August 3, 2018, Plaintiffs visited a Regions Bank branch in Shelby County and caused a wire transfer order in the amount necessary to close the sale to be issued. (Id. ¶ 8.) Plaintiffs allege that on August 7, 2018, a fraudulent wire transfer request was sent to and processed by Regions Bank,[3] resulting in $244,422.60 being wired to SunTrust Bank "who then caused the funds to be deposited… into an account which had been fraudulently substituted for the account number belonging to attorney J. Gilbert Parrish." (Id. ¶ 9.) On August 9, 2018, the scheduled date for the closing, Plaintiffs discovered that the closing attorney never received the necessary funds. (Id. ¶ 9.)

B.     *Procedural Background*

Plaintiff filed this action on April 27, 2020 in the Tennessee state court. (Compl., ECF No. 1-1.) The Regions Defendants removed the case to this Court on June 3, 2020. (ECF No. 1.)

On June 10, 2020, the Regions Defendants filed a Motion to Strike Plaintiffs' Jury Demand and a Motion to Dismiss. (ECF Nos. 9 & 11.) The Regions Defendants cite to the

---

[3] For a discussion regarding the alleged August 7, 2018 fraudulent wire transfer request, see infra, n.5.

arbitration and jury waiver clause contained within the Domestic Wire Transfer Request/Authorization Form which Plaintiffs' executed in support of their Motion to Strike Plaintiffs' Jury Demand.  (See generally ECF No. 9-1.)  The Regions Defendants' Motion to Dismiss alleges that Plaintiffs' Complaint fails to state a claim for relief because: (1) Article 4A of the U.C.C. preempts Plaintiffs' common law negligence, breach of warranty, and conversion claims; (2) Plaintiffs' allegations "negate any basis for a conversion claim"; (3) Plaintiffs have failed to "identify any provision of Article 4A [of the U.C.C.] allegedly breached by Regions, let alone any 'warranty' made by Regions pursuant to Article 4A"; (4) Plaintiffs have not pled the elements of their breach of contract claim under Tennessee law; and (5) Plaintiffs cannot recover attorney's fees or punitive damages.  (ECF No. 11-1 at PageID 106–14.)

Truist filed its Motion to Dismiss on June 10, 2020.  (ECF No. 10.)  Truist's Motion to Dismiss alleges that Plaintiffs' Complaint fails to state a claim for relief because: (1) Plaintiffs' claims fail under Federal Reserve Board Regulation J and Article 4A of the U.C.C.; (2) "Plaintiffs lack statutory standing to sue Truist"; (3) Plaintiffs' common law claims are preempted by Regulation J and Article 4A"; and (4) if Plaintiffs' common law claims are not preempted, they fail as a matter of law for a variety of reasons.  (Mot. to Dismiss, ECF No. 10; Mem. in Support of Mot. to Dismiss, Table of Contents, ECF No. 10-1 at PageID 79.)

Plaintiffs filed a Response and Motion for Leave to File an Amended Complaint on July 20, 2020.  (ECF Nos. 24 & 25.)  Plaintiffs, in their 3-page Response, assert that: (1) their proposed Amended Complaint "references Section 4A [of the U.C.C.], which is virtually identical to the Federal Counterpart, 12 C.F.R. Pt. 210, Subpt. B, App. B, Section 4A"; (2) the claims for negligence against all Defendants arise out of conduct that occurred "***antecedent*** to the mechanics of the handling of the wire transfer instructions by the Defendants, which *but for*

such negligent conduct, the loss to Plaintiffs would not have occurred"; and (3) this antecedent allegation of negligence entitles Plaintiffs to discovery and trial.  (ECF No. 24 at PageID 150–51 (emphasis in original).)  Plaintiffs failed to respond to the Regions Defendants' Motion to Strike.  (See generally ECF Nos. 24 & 25.)

On July 28, 2020, Plaintiffs filed a Reply (ECF No. 30) to a Supplemental Memorandum filed by the Regions Defendants on July 27, 2020 (ECF No. 29).  In their reply, Plaintiffs assert that their Motion to Amend should "be heard prior to consideration of the pending Motions of all Defendants to Dismiss."  (ECF No. 30 at PageID 178.)  Plaintiffs concede that "if the Motion to Amend the Original Complaint should be denied, the Motions to Dismiss must be granted. There would be no need to Amend the Original Complaint filed in State Court if it complied with the Federal Rules of Civil Procedure and Federal law in stating a claim for relief in this Court."  (Id.)

On August 3, 2020, both the Regions Defendants and Truist filed Responses to Plaintiffs' Motion to Amend.  (ECF Nos. 31 & 32.)  All Defendants oppose Plaintiffs' Motion on the grounds that the claims in the Proposed Amended Complaint are futile.  (See generally id.)  The Regions Defendants specifically assert that: (1) Plaintiffs' negligence claim is preempted by Article 4A; (2) the commercial reasonableness of Regions' security procedures under Tenn. Code Ann. § 47-4A-205 is irrelevant because Plaintiffs authorized the wire transfer in person; (3) Plaintiffs' allegations demonstrate that the Regions Defendants have no liability under Tenn. Code Ann. § 41-4A-207(b); and (4) Plaintiffs' Proposed Amended Complaint still fails to identify a contract or any specific provision of an alleged contract that Regions Defendants breached.  (See generally ECF No. 31.)  Truist adopts the Regions Defendants' arguments and reiterates its assertion that Plaintiffs cannot maintain a direct cause of action

5

against Truist because they "are not a Truist customer" and "Truist is not in privity with Plaintiffs". (ECF No. 32 at PageID 203–04.)

On August 4, 2020, Plaintiffs filed their Reply. (ECF No. 34.) Plaintiffs argue that Defendants' responses to the Motion to Amend are premature. (Id. ¶ 3.) Plaintiffs dispute that their negligence claim is preempted by Article 4A, stating that "neither [of the Tennessee Court of Appeals cases] cited by Regions are in any way applicable to the instant case, as neither case deals with the issues presented by *cyber criminals*[.]" (Id. ¶ 5 (emphasis in original).) Plaintiffs do not otherwise respond to Defendants' arguments regarding the futility of their claims.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave should be granted under Rule 15(a) unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Brown v. Chapman, 814 F.3d 436, 442 – 43 (6th Cir. 2016) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." Riverview Health Inst. LLC v. Med. Mut. Of Ohio, 601 F.3d 505, 512 (6th Cir. 2010) (quoting Rose v. Hartford Underwriters Ins., 205 F.3d 417, 420 (6th Cir. 2000)).

## III.    ANALYSIS

Plaintiffs' Proposed Amended Complaint appears to assert four claims against both Truist and the Regions Defendants: (1) common law negligence; (2) breach of contract; (3)

violation of Tenn. Code Ann. § 42-4A-207(b); and (4) violation of Tenn. Code Ann. § 42-4A-205.  (See generally ECF No. 25.)  The Court will address Defendants' arguments regarding the futility of each of those claims in turn.

> A.  *Negligence*

Defendants argue that Plaintiffs' negligence claim is preempted by Article 4A of title 27 of the Tennessee Code Annotated.  (ECF No. 31 at PageID 187–88.)  Defendants cite to numerous cases, including both a Sixth Circuit case and two Tennessee Court of Appeals cases, in support of their assertion that "negligence claims relating to the processing of wire transfer requests are preempted by Article 4A of the UCC."  (Id. at PageID 187.)  Plaintiffs' argue in response that the Tennessee Court of Appeals cases cited by the Defendants do not apply to this case because they dealt with "garden variety Fraudulent Ponzi schemes [] and employee embezzlement" and not "cyber criminals."  (ECF No. 34 ¶ 5.)

The Sixth Circuit, in a case involving claims under Article 4A of title 27 of the Tennessee Code Annotated, has held that where common-law claims arise out of a situation covered by the provisions of Article 4A or attempt to create rights, duties, and liabilities inconsistent with Article 4A, Article 4A preempts those claims.  Wright v. Citizen's Bank of East Tennessee, 640 F. App'x 401, 406–09 (6th Cir. 2016) (finding persuasive a comment to Tenn. Code § 47-4A-102 and the reasoning of other federal and state courts that claims arising out of situations addressed by Article 4A are displaced and applying it to hold that the plaintiffs' claims, fitting "squarely within Article 4A," were displaced).  The focus in Wright was on whether the claims arose out of a situation covered by Article 4A; once that was determined to be the case, the court held that those claims are displaced by Article 4A.  Id. at 408 (discussing cases cited by plaintiffs where courts found that Article 4A did not displace certain claims and

stating that "[i]n each of the[] cases, the alleged harm was the result of activity beyond the scope of Article 4A," or the case involved allegations of knowing or intentional misconduct by a bank).

Plaintiffs' negligence claims in the Proposed Amended Complaint arise out of a situation covered by Article 4A.  Plaintiffs' principal allegations involve a failure to maintain or abide by commercially reasonable security measures to prevent the fraudulent transfer of funds.  The extent of Defendants' duty to maintain and abide by commercially reasonable security procedures in relation to funds transfers is set forth in Article 4A.  In fact, Plaintiffs' Complaint acknowledges the applicability of Article 4A to its claims by alleging that their funds "would not have been incorrectly deposited in the fraudulent account… but for the antecedent negligence… [of the Defendants] in the processing of the fraudulent wire transfer request, [] *in violation of Sections 47-4A-205, 207(b), T.C.A*."  (ECF No. 25 ¶¶ 12, 15 (emphasis added).) Section 47-4A-205 establishes the parties' duties, rights and liabilities in connection with erroneous payment orders and section 47-4A-207(b) establishes the parties' duties, rights and liabilities in connection with the misdescription of a beneficiary's bank.  Because this case involves factual allegations of a payment order being paid to the wrong account, it is a situation covered by the same provisions of Article 4A that provide the basis of Plaintiffs' other claims.

Plaintiffs' Response to the Defendants' Motions to Dismiss asserts that the facts in the Complaint "establish negligence… which was ***antecedent*** to the mechanics of the handling of the wire transfer instructions."  (ECF No. 24 ¶ 3 (emphasis in original).)  But Plaintiffs do not, in any of their filings, identify specific activity of the Defendants that is beyond the scope of Article 4A and provides a basis for their negligence claims.  See Wright, 640 F. App'x 401, 409 (distinguishing cases that found that Article 4A did *not* displace common law claims on the

basis that those cases alleged harm that was the result of activity beyond the scope of Article 4A and involved knowing misconduct). Plaintiffs' characterization of Defendants' negligence as "antecedent" alone does not sufficiently allege that any part of the Defendants' conduct was beyond the scope of Article 4A.

  Plaintiffs also argue in their Reply that the Tennessee state cases cited by the Regions Defendants in support of their argument that Article 4A displaces Plaintiffs' common law negligence claims are distinguishable from the present case. (ECF No. 34 ¶ 5; see also ECF No. 31 at PageID 187 (citing C-Wood Lumber Co., Inc. v. Wayne County Bank, 233 S.W.3d 263, 281–82 (Tenn. Ct. App. 2007) & Fuller v. Community National Bank, No. E2018-02023-COA-R3-CV, 2020 WL 1485696, at *12 (Tenn. Ct. App. Mar. 27, 2020)).) Plaintiffs attempt to distinguish C-Wood Lumber and Fuller on the basis that the former deals with employee embezzlement and the latter deals with "garden variety Fraudulent Ponzi schemes," while Plaintiffs' characterize the instant case as involving cyber criminals. (ECF No. 34 ¶ 5.) This is not a meaningful distinction. The focus of Plaintiffs' claims is the Defendants' alleged failure to maintain or abide by commercially reasonable security procedures. Article 4A's provisions regarding commercially reasonable security procedures apply to all funds transfers, regardless of the alleged sophistication of third-party criminals.

  In summary, Article 4A displaces Plaintiffs' common law negligence claims against all Defendants because the Defendants' conduct alleged by the Plaintiffs is within the scope of Article 4A. Therefore, Plaintiffs' negligence claims, as set out in the Proposed Amended Complaint, are futile.

B.   *Breach of Contract*

"[T]he elements of a Tennessee breach-of-contract claim are (1) the existence of a valid contract, (2) a deficiency in the performance of the contract amounting to a breach of the agreement, and (3) damages because of the breach." SPE GO Holdings, Inc. v. W & O Constr., Inc., 759 F. App'x 359, 365 (6th Cir. 2018) (citing Fed. Ins. Co. v. Winters, 354 S.W.3d 287, 291 (Tenn. 2011)). Both Truist and the Regions Defendants argue that Plaintiffs' breach of contract claims are futile because Plaintiffs fail to identify the allegedly breached contract or provision of a contract.[4] (ECF No. 31 at PageID 193–94.)

Defendants are correct. Plaintiffs' Proposed Amended Complaint fails to identify a specific contract that either Truist or the Regions Defendants breached. And, to the extent that Plaintiffs' Proposed Amended Complaint can be understood to identify the August 3 Wire Request (ECF No. 31-1) as the contract the Regions Defendants allegedly breached, Plaintiffs do not identify a provision that the Regions Defendants allegedly breached. Furthermore, Plaintiffs' allegations demonstrate that the Regions Defendants complied with the terms of the August 3 Wire Request, rather than breaching those terms. Plaintiffs disclaimed the Regions Defendants' liability relating to any error resulting from their reliance on Plaintiffs' instructions. (ECF No. 31-1 ¶¶ 5–6 (agreeing that Regions Defendants would not be "responsible for detecting any Customer error contained in any Transfer Instructions issued by Customer" and that they "shall have no obligation to discover errors in Transfer Instructions and shall not be liable to Customer for errors made by Customer, including errors made in identifying the beneficiary").)

---

[4] Truist adopts the Regions Defendants' arguments regarding the futility of Plaintiffs' breach of contract claims in the Proposed Amended Complaint. (ECF No. 32.) Truist also raised its own arguments regarding Plaintiffs' failure to identify a contract between Plaintiffs and Truist in its Motion to Dismiss. (ECF No. 10-1 at PageID 95–96 ("[T]he Complaint does not identify any contract between Plaintiffs and Truist.".)

Because Plaintiffs fail to identify a contract or provision of a contract that either the Regions Defendants or Truist breached, their breach of contracts claims in the Proposed Amended Complaint are futile. See, e.g., Pearson v. Specialized Loan Servicing, LLC, No. 1:16-cv-318, 2017 WL 3158791, at *4 (E.D. Tenn. Jul. 24, 2017) (finding plaintiff's failure "to identify any provision in the security trust… that the [defendant] has breached" to be "fatal to her claim [for breach of contract]" and dismissing claim for failure to state a claim upon which relief can be granted); Simmons v. Countrywide Home Loans, No. 3:09-00621, 2010 WL 1408592, at *3 (M.D. Tenn. Feb. 25, 2010) (dismissing plaintiffs' breach of contract claims because they "fail[ed] to allege which provisions of the Loan Agreement were breached by Defendants, or how those provisions were breached").

    *C.*    *Tenn. Code Ann. § 42-4A-207(b)*

Tennessee Code Annotated § 42-4A-207(b) provides that where, as here, a payment order "identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons," and "if the beneficiary's bank does not know that the name and number refer to different persons," then the beneficiary's bank "may rely on the number as the proper identification of the beneficiary." Tenn. Code Ann. § 47-4A-207(b). "The beneficiary's bank need not determine whether the name and number refer to the same person." Id.

Subsection 207(c) provides that, in the situation described by § 207(b) and where the originator is not a bank, "the originator is not obliged to pay its order unless the originator's bank proves that the originator, before acceptance of the originator's order, had notice that payment of a payment order issued by the originator might be made by the beneficiary's bank

11

on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary." Tenn. Code Ann. § 47-4A-207(c).

Here, Plaintiff Melanie Berry is the originator, the Regions Defendants are the originator's bank and Truist is the beneficiary's bank. See Tenn. Code Ann. §§ 47-4A-103(a)(3) & 47-4A-104(c)–(d). (See also ECF No. 10-1 at PageID 87–88.) Plaintiffs' claim that Truist violated § 47-4A-207(b) is futile because § 207(b) permits the beneficiary's bank to rely on the account number if the bank did not know that the name and number referred to different persons. Plaintiffs make no allegations that Truist knew that the name and account number referred to different persons.

Plaintiffs' claim that the Regions Defendants violated § 47-4A-207(b) is futile because Plaintiffs had notice that the beneficiary's bank might rely on an identifying number in making payment pursuant to the payment order even if the number identifies a person different from the named beneficiary. See § 47-4A-207(c). Under the August 3 Wire Request, Plaintiffs agreed to and had the required notice. (See ECF No. 31-1 ¶ 6 ("Customer acknowledges and agrees that (a) if the identifying number or bank account number Customer has given in this request is not the named beneficiary's, the beneficiary's bank may pay this funds transfer according to the number rather than according to the beneficiary's name.").). Plaintiffs, as the originator, were required to pay the order. See § 47-4A-207(c)(2).

Based on Plaintiffs' allegations in the Proposed Amended Complaint, neither Truist nor the Regions Defendants violated § 47-4A-207(b). Therefore, Plaintiffs claims against the Defendants for violation of § 207(b) are futile.

D.     Tenn. Code Ann. § 42-4A-205

Plaintiffs' also claim that Truist and the Regions Defendants violated § 42-4A-205. Truist argues that Plaintiffs "cannot maintain a direct cause of action against Truist" because Plaintiffs are not a Truist customer and dealt only with Regions. (ECF No. 32 at PageID 204.) The Regions Defendants argue that § 205 and the commercial reasonableness of their security procedures are inapplicable to this case because Plaintiffs authorized the funds transfer in person at a Regions bank branch. (ECF No. 31 at PageID 188–89.) Plaintiffs have not responded to these arguments.

Truist argues that, as the beneficiary's bank, it was not in privity with Plaintiffs and they have no cause of action against Truist under Article 4A. (ECF No. 32 at PageID 204.) In support of this assertion, Truist cites to Second Circuit caselaw interpreting Article 4A and dismissing claims against a beneficiary's bank on grounds of lack of privity. See Wellton Int'l Express v. Bank of China (Hong Kong), --- F. Supp. 3d ----, 19-CV-6834 (JPO), 2020 WL 1659889, at *3 (S.D.N.Y. Apr. 3, 2020). The court in Wellton held that "as the beneficiary bank, [defendant] was not a party to the payment order. … Because there is a lack of privity between Plaintiffs and [defendant], Plaintiffs cannot maintain a cause of action against either defendant." Id. The quoted language was part of the court's discussion regarding the plaintiffs' § 207 claim against the defendant, but its reasoning is applicable to § 205. The beneficiary's bank is not a party to the payment order at issue in both §§ 205 and 207; if there is a lack of privity between plaintiffs and the beneficiary's bank in cases involving alleged violations of §207, that same lack of privity is a barrier to a plaintiff's § 205 claim.

Even if lack of privity is not a barrier to Plaintiffs' § 205 claim against Truist for the same reasons as supported the court's conclusion in Wellton, the claim is futile. Section 205

13

provides rules regarding the erroneous *transmission* of a payment order pursuant to a security procedure; the beneficiary's bank has no role in that transmission. The content of § 205's rules supports that conclusion. None of the rules provided for in § 205 are directed at the beneficiary's bank and there is therefore no means by which a beneficiary's bank could violate § 205.

The Regions Defendants, as the originator's bank, focus instead on the fact that the § 205 rules only apply "[i]f an accepted payment order was transmitted pursuant to a security procedure for the detection of error." Tenn. Code Ann. § 47-A-205(a). (See also ECF No. 31 at PageID 189.) The Regions Defendants argue that the payment order was authorized in person by Plaintiffs and that therefore the commercial reasonableness of their security procedures is irrelevant. (Id.)

It is clear from the Proposed Amended Complaint that Plaintiffs authorized the August 3 Wire Request in person.[5] Plaintiff Melanie Berry's signature on the August 3 Wire Request is hand-written (see ECF No. 31-1 at PageID 198) and the terms of the August 3 Wire Request state that "[t]his Funds Transfer Agreement governs only Transfer instructions issued in person by Customer." (ECF No. 31-1 ¶ 1.) When a payment order is authorized by the person identified by the sender, security procedures for verifying the authenticity of a payment order are irrelevant. See Tenn. Code Ann. § 47-4A-207 (subsection (a) states that "[a] payment order… is the authorized order of the person identified as sender if that person authorized the order…" whereas subsection (b) states that a payment order "is effective as the order of the

---

[5] Plaintiffs are not entirely clear in the Proposed Amended Complaint regarding the alleged sequence of events. They seem to allege that there was a second, electronic and fraudulent wire transfer request submitted on August 7, 2018 and that the Regions Defendants processed that request and not the August 3 Wire Request. (See ECF No. 25 ¶ 9.) But the Regions Defendants attached the Regions Wire Report to their Response to Plaintiffs' Motion to Amend, which confirms that the wire was conducted on August 3, 2018. (See ECF No. 31-2.) "When a written instrument contradicts allegations in the complaint, the exhibit trumps the allegations." Segrist v. Bank of New York Mellon, No. 3:16-cv-00063, 2017 WL 3674841, at *3 n.4 (M.D. Tenn. Aug. 25, 2017).

customer" "[i]f the bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure.").

Plaintiffs do not allege that the August 3 Wire Request was authorized or authenticated pursuant to a security procedure. Instead, the allegations of the Proposed Amended Complaint make clear that the August 3 Wire Request was authorized in person. The Regions Defendants correctly argue that "[c]ommercially reasonable verification methods to test the authenticity of the request are irrelevant and inapplicable to the facts at hand." (ECF No. 31 at PageID 191.) Commercially reasonable security procedures are necessary when payment orders are electronically transmitted and there is therefore "no way of determining the identity or the authority of the person who caused the message to be sent." Tenn. Code Ann. § 47-4A-203, cmt. 1. Because Plaintiffs authorized the wire transfer in person and not electronically, § 205 is inapplicable to the case and Plaintiffs' § 205 claim against the Regions Defendants is futile.

## IV.     CONCLUSION

For each of the reasons set forth above, Plaintiffs' claims in the Proposed Amended Complaint are futile. Therefore, Plaintiffs' Motion to Amend is **DENIED**. Furthermore, Plaintiffs have conceded that "if the Motion to Amend the Original Complaint should be denied, the Motions to Dismiss must be granted." (ECF No. 30 at PageID 178.) Accordingly, the Regions Defendants' and Truist's Motions to Dismiss (ECF Nos. 10 & 11) are hereby **GRANTED** and Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE**. Because Plaintiff's Complaint is dismissed in its entirety, the Regions Defendants' Motion to Strike Plaintiffs' Jury Demand (ECF No. 9) is **DENIED AS MOOT**.

**SO ORDERED**, this 17th day of December, 2020.

                                                /s/ Jon P. McCalla
                                                JON P. McCALLA
                                                UNITED STATES DISTRICT JUDGE